UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MICHAEL TALBERT,
    Plaintiff,

vs.                         Case No. 08-2233

WARDEN JOSEPH LOFTUS, et al,
Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court are Defendant's summary judgment motion [21], Plaintiff's response [24] and Defendant's reply [26].

Standard

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

Paintiff brings this action pursuant to 42 U.S.C. §1983 for alleged violations of his Eighth Amendment rights while he was at Danville Correctional Center ("Danville"). Specifically, Plaintiff alleges that Defendant, Keith Anglin was deliberately indifferent to a serious medical need by interfering with his medical care. On November 15, 2007, Plaintiff was in a fight with another inmate, who hit him in the head with a sock that contained batteries or an adapter, resulting in two small cuts to the top of his head. He claims the doctor at Danville was going to have an x-ray taken, but that Defendant refused to allow an x-ray and sent Plaintiff to segregation. Plaintiff seeks monetary damages and injunctive relief in the form of immediate medical attention.

## Undisputed Material Facts[1]

1. At all times relevant to this lawsuit, Plaintiff was incarcerated at Danville Correctional
2. At all times relevant to this lawsuit, Defendant was employed as Warden at Danville. (Complaint; Affidavit of Keith Anglin, attached hereto as Ex. B, para. 1.)
3. At all times relevant to this lawsuit, Defendant acted under color of state law. (Complaint.)
4. On November 15, 2007, Plaintiff was taken to Danville's Health Care Unit ("HCU") after he fought with another inmate, who struck him in the top of the head with a sock that contained either batteries or an adapter. (Complaint; Deposition of Michael Talbert, p. 9, relevant pages of which are attached hereto as Ex. A; Affidavit of Bashirahmed Amedji, M.D., para. 4, attached hereto as Ex. C; Affidavit of Paula Clawson, para. 2, attached hereto as Ex. D.)
5. Defendant arrived in Plaintiff's housing unit as Plaintiff and the other inmate involved in the fight were being handcuffed. Plaintiff was bleeding a little from the top of his head, and he was taken to the HCU to have his wound evaluated. (Ex. B, para. 4- 5.)
6. At the Health Care Unit, Plaintiff was seen by Dr. Amedji and Nurse Clawson. (Ex. C, para. 4; Ex. D, para. 2.)
7. In the HCU, Nurse Clawson took Plaintiff's vital signs, which were normal, and noted that he was alert and oriented X3. (Ex. D, para. 3.)

---

[1] Exhibits can be found attached to Defendants' Memorandum [22], except Complaint is at Docket Entry [1].

2

8. Nurse Clawson then examined the top of Plaintiff's head where he had been hit. She saw one small, shallow laceration approximately 1 cm in length, one superficial laceration, and a bump on the top of his head. The wounds were cleansed, an antibiotic ointment was applied, and he was given a tetanus shot, per Dr. Amedji. (Ex. D, para. 3.)
9. No stitches were required to close these wounds. (Ex. A, p. 23.)
10. Although Plaintiff claims he "could have sworn I heard the doctor tell the warden that he should get x-rays," Dr. Amedji did not order an xray or believe one was medically necessary. (Ex. A, p. 20; Ex. C, para. 4; Ex. D, para. 4.)
11. Had Dr. Amedji ordered an x-ray or indicated that one was medically necessary, it would have been noted in Dr. Amedji's and Nurse Clawson's November 15, 2007, entries in Plaintiff's Offender Outpatient Progress Notes. (Ex. C, para. 4; Ex. D, para. 4.)
12. Although Defendant does not recall accompanying Plaintiff to the HCU, it is possible that he did. When a fight between inmates occurs, it is imperative that prison officials determine as quickly as possible how the fight began, what weapons, if any were used, who was involved, and whether any retaliation is expected. This is particularly important when the fight involves inmates of different races, as in this case. (Ex. B, para. 6.)
13. If Defendant was present while Plaintiff was being evaluated, he was there solely for security reasons. (Ex. B, para. 6.)
14. Defendant has no authority to order treatment, refuse treatment or overrule medical determinations made by the medical staff, and he did not tell the medical staff how to do their jobs. (Ex. B, para. 7; Ex. C, para. 5.)
15. Any attempt by security staff to interfere with medical evaluation or treatment would have been noted in Dr. Amedji's entry in Plaintiff's medical records. (Ex. C, para. 5.)
16. Plaintiff was escorted to segregation approximately three hours after arriving in the HCU. (Ex. D, para. 6.)
17. Inmates involved in a fight are routinely placed in segregation after they are seen by medical staff. (Ex. A, p. 36; Ex. B, para. 9.)
18. Plaintiff concedes he does not know how he was injured by not receiving an x-ray. (Ex. A, p. 22, 25.)
19. Although Plaintiff alleges he has ongoing headaches and vision loss, he has never complained about these to another doctor, despite the fact that he has been to two prisons since then. (Ex. A, p. 22, 25.)
20. Although Plaintiff filed four grievances in which he mentioned the November 15, 2007, fight and/or injuries he received from the fight, none of those grievances mentions Defendant or his alleged interference with Plaintiff's medical care. (Ex. A, p. 34-5; Affidavit of Vanessa Shaw, para. 3-5, attached hereto as Ex. E.)
21. Although Plaintiff alleges that one of the grievances attached to Ms. Shaw's affidavit as Ex. 1, contained a second page in which he complained about Defendant's alleged actions, that grievance was only a one-page affidavit. (Complaint; Ex. A, p. 34-6, Ex. E, para 3.)
22. Plaintiff does not have a copy of this grievance. (Ex. A, p. 39.)

Conclusion

3

Pursuant to the Prison Litigation Reform Act (PLRA") all prison inmates bringing an action under 42 U.S.C. 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before being allowed to proceed with

the lawsuit. 42 U.S.C. 1997e(e).  Pursuit of administrative remedies is necessary no matter what relief the Plaintiff seeks, including monetary damages.  *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).  Section 1997e(e) makes exhaustion a precondition to filing suit. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999).  In order to fully exhaust administrative remedies, inmates are required to file a grievance regarding an issue at the institutional level, receive a response from the Chief Administrative Officer of the institution ("Warden"), and if the Warden denies the grievance, appeal the denial to the Administrative Review Board ("ARB") within 30 days. 20 Ill. Admin. Code 504.850.  His grievance must be filed within 60 days of the incident, and it must contain factual details regarding each aspect of the inmate's complaint, including what happened, when, where and the name of each person who is the subject of the complaint.  20 Ill. Admin. Code 504.810(b).  Once a decision has been rendered at the institutional level, the inmate must appeal within 30 days any adverse result to the Director of the Department through the Administrative Review Board. 20 Ill. Admin.  Code 504.850.  The inmate's administrative remedies are not exhausted until the appeal is ruled on by the Director through the Board.  Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

The Plaintiff has failed to prove that he exhausted administrative remedies for his claim against Defendant Anglin.  Because Plaintiff is an inmate, he was required to exhaust his administrative remedies against Defendant before filing a lawsuit against him.  However, none of the grievances that Plaintiff filed concerning the events of November 15, 2007, mentions Defendant or his alleged interference with Plaintiff's medical care.  Although Plaintiff claims that the grievance identified as Ex. E1 has a second page and that he mentioned Defendant on that allegedly missing page, that grievance only has one page, and Plaintiff admits he does not have a copy of this grievance to prove otherwise.  The court therefore finds Plaintiff did not grieve Defendant's alleged actions, and therefore he cannot raise them in this lawsuit. Therefore, Defendant is entitled to summary judgment in his favor.

Based on the foregoing:

1.      Pursuant to Fed. R. Civ. Pro. Rule 56 and 42 U.S.C. § 1997e(a), Defendant's motion for summary judgment [21] is granted.  The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff and to terminate this lawsuit in its entirety.

2.  If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

Enter this 8th day of February 2010.

s/ Michael P. McCuskey
_____
Michael P. McCuskey
Chief United States District Judge